UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LATONYA BRANDON,

                        Plaintiff,

v.                                                      5:15-CV-0386
                                                        (GTS)

CAROLYN W. COLVIN
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

STANLEY LAW OFFICES                             JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                     BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Latonya Brandon,

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on July 7, 1971.  Plaintiff has a high school education, completed two years of college, and has past work as a hair braider and a customer service representative. Generally, Plaintiff's alleged disability consists of degenerative disc disease of the cervical and lumbar spine, obesity, depression, and anxiety.

### B.    Procedural History

On April 3, 2012, Plaintiff applied for Disability Insurance Benefits.  Plaintiff's application was initially denied on June 20, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On July 12, 2013, Plaintiff appeared in a hearing before the ALJ, F. Patrick Flanagan.  (T. 54-94.)  On September 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 8-23.)  On March 10, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 13-19.)  First, the ALJ found that Plaintiff meets the insured status requirements through December 31, 2016, and has not engaged in substantial gainful activity since October 10, 2011, the original alleged onset date.[1]  (T. 13.)  Second, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine and obesity were severe impairments, but that Plaintiff's alleged depression and anxiety were not severe impairments.

---

[1]    At the hearing, Plaintiff amended her alleged disability onset date to December 1, 2012.

(*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 14.)  The ALJ considered Listing 1.04, disorders of the spine.  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).[2]  (T. 18.)  Fifth, the ALJ found that Plaintiff could perform her past relevant work as a hair braider and a customers service representative.  (T. 18-19.)  Sixth, and finally, the ALJ found in the alternative that the Medical-Vocational Guidelines direct a finding of "not disabled" at step five.

### D.     The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts four arguments in support of her motion for judgement on the pleadings.  First, Plaintiff argues that the ALJ did not apply the appropriate legal standards in evaluating the medical opinion evidence and formulating the RFC.  (Dkt. No. 11, at 1, 9-14 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that the ALJ erred by (1) failing to afford controlling weight to the opinion of treating physician Anthony DiRubbo, M.D., (because the ALJ afforded the same amount of weight to the opinion of consultative orthopedic examiner Kalyani Ganesh, M.D.), and (2) not including any mental limitations in the RFC.  (*Id.*)  Second, Plaintiff argues that the ALJ failed to apply the appropriate legal standards in assessing her credibility.  (*Id.*, at 1, 14-16.)  Third, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform her past relevant work as a hair braider and a customer service representative. (*Id.*, at 1, 16-18.)  Fourth, and finally, Plaintiff argues that the ALJ's alternative finding that Plaintiff could perform other existing work was not supported by substantial evidence because the ALJ did not obtain vocational expert testimony.  (*Id.*, at 1, 18-19.)

---

[2]         Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday.  20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983).

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (Dkt. No. 12, at 5-12 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found that Plaintiff could perform her past relevant work at step four. (*Id.*, at 12-14.) Within this argument, Defendant argues that the ALJ properly relied on the Medical-Vocational Guidelines in making his alternative finding that Plaintiff could perform other existing work at step five. (*Id.*)

## II.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.**     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering

> vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and addressed out of order below.

### A.      Whether the ALJ Erred in Weighing the Medical Opinions Evidence in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 5-12 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999); 20 C.F.R. § 404.1545(a). "In assessing a

claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the

source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 404.1527(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i. Consultative Orthopedic Examiner Kalyani Ganesh, M.D.

On May 23, 2012, Dr. Ganesh opined that Plaintiff had "no gross limitation" in sitting, standing, or walking, and had "mild to moderate" limitation in lifting, carrying, pushing, and pulling. (T. 307.) Dr. Ganesh diagnosed Plaintiff with high blood pressure, neck pain, and lower back pain. (*Id.*)

Upon examination, Dr. Ganesh observed that Plaintiff had a normal gait and station, but was obese and could not squat or walk on her heels and toes. (T. 306.) Dr. Ganesh observed that Plaintiff used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*) Dr. Ganesh observed that Plaintiff's hand and finger dexterity were intact, and she had full grip strength bilaterally. (*Id.*) Dr. Ganesh further observed that Plaintiff had full flexion and extension to 15 degrees in the lateral spine, with no cervical or paracervical pain or spasm. (*Id.*) Dr. Ganesh observed that Plaintiff had thoracic and lumbar spinal tenderness, sciatic notch tenderness, and limited range of motion, but a straight leg raising test was negative bilaterally. (T. 306-07.) Finally, Dr. Ganesh observed that Plaintiff had absent reflexes in the upper and lower extremities, but had full proximal and distal muscle strength, no muscle atrophy, no sensory abnormality, no joint inflammation, and no joint instability. (*Id.*)

The ALJ afforded some weight to Dr. Ganesh's opinion, reasoning that it predated Plaintiff's amended disability onset date and understated Plaintiff's limitations in standing and walking based on her examination findings and the treating source record. (T. 17.)

## ii.     Treating Physician Anthony DiRubbo, M.D.

On February 26, 2013, Dr. DiRubbo opined that Plaintiff had "very limited" functioning in walking, standing, pushing, pulling, bending, lifting, carrying, climbing stairs, and performing other climbing.[3]  (T. 493.)  Dr. DiRubbo further opined that Plaintiff had "moderately limited" functioning in sitting, and had "no evidence of limitation" in seeing, hearing, speaking, using her hands, and using public transportation.[4]  (*Id.*)  Dr. DiRubbo diagnosed Plaintiff with chronic low back pain with sciatica symptoms, and noted that an MRI examination of Plaintiff's spine showed disc space narrowing and nerve root impingement.  (T. 492.)

The ALJ afforded some weight to Dr. DiRubbo's opinion, reasoning that the opinion regarding Plaintiff's ability to walk for two hours during a workday is consistent with the overall record, but the opinion overstated Plaintiff's overall limitations based on the medical record.  (T. 18.)  More specifically, the ALJ noted that diagnostic imaging studies showed only mild to moderate pathology and clinical findings showed some tenderness and limited range of motion, but no motor or sensory changes.  (*Id.*)  Moreover, the ALJ noted that while the record showed periods of exacerbation in Plaintiff's back pain, Plaintiff's pain generally improved over time. (T. 15-18.)

For example, the ALJ noted that, in November 2012, Plaintiff reported to an examining physician at Dr. DiRubbo's office that she felt significantly better and aquatic therapy was helping her a lot.  (T. 16.)  The ALJ noted that, in March 2013, Plaintiff reported to examining

---

[3]     The assessment form defined "very limited" functioning as able to perform the activity one to two hours per day.  (T. 493.)

[4]     The assessment form defined "moderately limited" functioning as able to perform the activity two to four hours per day, and "no evidence of limitation" as able to perform the activity more than four hours per day. (T. 493.)

spinal surgeon Mike Sun, M.D., that physical therapy had helped with her symptoms and steroid injections typically provided pain relief for about a month.  (*Id.*)  Additionally, the ALJ noted that, in March and April of 2013, treatment notes cosigned by Dr. DiRubbo and other examining physicians in his office observed that Plaintiff walked into the office with no cane or walker support, had a normal range of motion and no spinal tenderness upon musculoskeletal examination, and reported that her pain was much better and she was able to perform most of her activities of daily living independently.  (T. 16-17) (referencing T. 679-81, 687).

Plaintiff argues that the ALJ erred by (1) affording the same amount of weight to the opinions from treating physician Dr. DiRubbo and consultative examiner Dr. Ganesh, (2) misstating Dr. DiRubbo's opinion, (3) selectively relying on "cherry-picked" evidence from the opinions that supported the ALJ's opinion, and (4) failing to include mental limitations in the RFC determination.  (Dkt. No. 11, at 9-14 [Pl.'s Mem. of Law].)  The Court will address each argument in turn below.

First, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability.  20 C.F.R. § 404.1512(b)(6), 404.1513(c), 404.1527(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

10

Accordingly, the ALJ did not err affording the same amount of weight to consultative examiner Dr. Ganesh's opinion and treating physician Dr. DiRubbo's opinion, which the ALJ properly determined was not entitled to controlling weight. As discussed above, the ALJ properly applied the regulations in evaluating Dr. DiRubbo and Dr. Ganesh's opinions by considering each physician's professional credentials, treating or examining relationship with Plaintiff, treatment or examination notes, and the consistency of each opinion with other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c). (T. 13-18.)

Second, the Court turns to Plaintiff's argument that the ALJ erred by stating that Dr. DiRubbo opined that Plaintiff could walk for two hour during a work day because Dr. DiRubbo's assessment form indicated that Plaintiff's ability to walk was "very limited," defined as one to two hours per day. (Dkt. No. 11, at 11 [Pl.'s Mem. of Law]) (referencing T. 18). The Court notes that, in summarizing Dr. DiRubbo's opinion earlier in the same paragraph, the ALJ expressly stated that Dr. DiRubbo opined that Plaintiff could walk "one to two hours" per day. (T. 17-18). Accordingly, to the extent that Plaintiff's argument contends that the ALJ misunderstood or mischaracterized Dr. DiRubbo's opinion, the Court finds that Plaintiff's argument is without merit.

Third, the Court turns to Plaintiff's argument that the ALJ "cherry-picked" the opinions of record and selectively relied on the parts of the opinions that supported his RFC finding. (Dkt. No. 14, at 19-20 [Pl.'s Mem. of Law].) The Court recognizes that an ALJ must not "cherry-pick" only the evidence from medical sources that supports a particular conclusion and ignore the contrary evidence. *Bush v. Colvin,* 13-CV-0994, 2015 WL 224764, at *11 (N.D.N.Y. Jan. 15, 2015); *Royal v. Astrue,* 11-CV-0456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (citing, *inter alia, Fiorello v. Heckler*, 725 F.2d 174, 175-76 [2d Cir. 1983]). Although the Court will

11

not restate each medical opinion herein, a review of the decision indicates that the ALJ

thoroughly and accurately discussed each medical opinion, including evidence contrary to the

RFC, and explained his reasoning for the weight afforded to each opinion.  (T. 13-18.)

Moreover, the ALJ's RFC assessment was supported by substantial evidence, including Dr.

Ganesh's opinion indicating that Plaintiff had no more than moderate physical limitations.  (T.

307.)

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC.  20 C.F.R.

§ 404.1545.  In formulating a plaintiff's RFC, an ALJ does not have to strictly adhere to the

entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of

medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-

CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the

ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another

portion).  For these reasons, the Court finds that the ALJ properly assessed the physical opinions

of record in determining Plaintiff's RFC.

Finally, the Court turns to Plaintiff's argument that the ALJ failed to include any mental

limitations in the RFC.

### i.      Consultative Psychiatric Examiner, Jeanne Shapiro, Ph.D.

On May 23, 2012, Dr. Shapiro opined that Plaintiff appeared capable of following and

understanding simple directions and instructions and, barring any medical contraindications,

Plaintiff appeared capable of performing simple and complex tasks independently.  (T. 303.)  Dr.

Shapiro opined that Plaintiff may have difficulty consistently maintaining attention and

concentration because she gets distracted due to pain, and Plaintiff could not always maintain a

regular schedule because she could not drive when she is in too much pain.  (*Id.*)  Dr. Shapiro opined that Plaintiff appeared capable of learning new tasks, making appropriate decisions, and relating adequately with others, and for the most part appeared able to deal with stress appropriately.  (*Id.*)  Dr. Shapiro concluded that Plaintiff did not have a psychiatric diagnosis. (T. 14.)

Upon mental examination, Dr. Shapiro found that Plaintiff's attention and concentration, and recent and remote memory skills were grossly intact.  (T. 302.)  Plaintiff was able to perform counting, simple calculations, and serial threes from 20; Plaintiff could recall three out of three objects immediately and three out of three objects after five minutes; and Plaintiff could accurately recall six digits forward and five digits backward.  (*Id.*)  Dr. Shapiro observed that Plaintiff's mood appeared calm, but that she was in pain.  (*Id.*)  Dr. Shapiro further observed that Plaintiff's affect was full range and appropriate to her speech and though content, and Plaintiff's thought processes were coherent and goal directed.  (*Id.*)

At step two, the ALJ noted that Plaintiff alleged disability based on depression and anxiety and reported having anxiety attacks one or two times per month.  (T. 12.)  The ALJ noted that Plaintiff reported to Dr. Shapiro that she felt depressed sometimes due to her pain and inability to do things that she would like to do, but reported that she had never been hospitalized or treated for a psychiatric problem and denied having any other psychiatric symptoms.  (*Id.*) The ALJ afforded great weight to Dr. Shapiro's conclusion that Plaintiff did not have a psychiatric diagnosis, reasoning that it was consistent with Dr. Shapiro's examination findings and the lack of documentation for a medically determinable psychiatric impairment in the record. (T. 14.)  However, the ALJ afforded little weight to Dr. Shapiro's opinion regarding the effects of pain on Plaintiff's ability to maintain attention and concentration and maintain a regular

schedule due to pain, reasoning that it was inconsistent with Dr. Shapiro's examination findings that Plaintiff's attention and concentration were grossly intact, and was unsupported by the medical record. (T. 14.)

For example, on November 16, 2011, examining psychologist Tammy Bartoszek, Psy.D., noted that Plaintiff denied any history of an attention disorder. (T. 527.) Upon mental status examination following Plaintiff's accident, Dr. Bartoszek observed that Plaintiff seemed to have good recall and did not seem to have clear mental status changes. (*Id.*) Further, Dr. Shapiro's opinion that Plaintiff may have driving difficulties was inconsistent with Plaintiff's own function reports and testimony that she is able to drive. (T. 60, 216, 305.) Accordingly, the ALJ properly applied the regulations in evaluating Dr. Shapiro's opinion by considering her professional credentials, examining relationship with Plaintiff, examination notes, and the consistency of the opinion with other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c).

For these reasons, the ALJ's assessment of the medical evidence was supported by substantial evidence, and remand is not necessary on this basis.

B.    **Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 5-13[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence

14

in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at \*17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T.

18.)  The ALJ noted that Plaintiff alleges disability based on neck pain, back pain, leg pain, and obesity, and reported that she experiences stabbing neck, back, and leg pain every day.  (T. 15.)  The ALJ noted that Plaintiff testified that she could sit comfortably for 15 to 20 minutes, could walk fifty feet and used a cane for walking in her home and outside, and could perform most of the household cooking, but her children helped her with cleaning and laundry.  (*Id.*)  Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged.

First, the ALJ considered medical evidence that was inconsistent with Plaintiff's allegations of disabling symptoms, including Dr. Ganesh's opinion indicating that Plaintiff had no more than moderate physical limitations.  (T. 13-18.)  The ALJ noted that diagnostic imaging studies showed only mild to moderate pathology, and clinical findings showed some tenderness and limited range of motion, but no motor or sensory changes.  (T. 18.)  The ALJ noted that while Dr. Ganesh observed that Plaintiff was unable to walk on heels and toes, Dr. Ganesh also observed that Plaintiff had a normal gait and station and used no assistive devices.  (T. 17.)  Similarly, the ALJ noted that in March 2013 and April 2013, examination notes from Dr. Sun and Dr. DiRubbo observed that Plaintiff walked with no cane or walker support.  (T. 16-17.)

Second, the ALJ considered Plaintiff's medical treatment history, including measures that Plaintiff took to relieve her symptoms.  (T. 13-18.)  The ALJ noted that the record showed periods of exacerbation in Plaintiff's back pain, but that Plaintiff's pain generally improved over time.  (T. 15-18.)  For example, the ALJ noted that, in November 2012, Plaintiff reported to Dr. Rajanna that she felt significantly better, and that aquatic therapy was helping her a lot.  (T. 16.)  The ALJ further noted that, in March 2013, Plaintiff reported to Dr. Sun that steroid injections typically provided pain relief for about a month, and physical therapy had helped with her

16

symptoms. (*Id.*) Additionally, the ALJ noted that, in March and April of 2013, treatment records from Dr. DiRubbo's office noted that Plaintiff had a normal range of motion and no spinal tenderness upon musculoskeletal examination, and Plaintiff reported that her pain was much better and she was able to perform most of her activities of daily living independently. (T. 16-17.)

Third, the ALJ considered inconsistencies in Plaintiff's reports regarding her symptoms and activities of daily living. (T. 18.) For example, the ALJ noted that Plaintiff repeatedly reported that she performed most activities of daily living independently and testified that she drove a car and cared for her young children. (*Id.*) Plaintiff reported that she does "everything" for her two children when she can, including cooking, laundry, and cleaning. (T. 213-17, 302-03.) Accordingly, the Court finds that the ALJ properly determined that Plaintiff's activities, including childcare, housework, and driving, supported the ALJ's determination that Plaintiff's alleged symptoms were not disabling. *See Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (finding that the plaintiff's activities, including childcare and occasional vacuuming, washing dishes, and driving, supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling.); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (finding that the plaintiff's report that she could "cook, sew, wash and shop, so long as she did these chores slowly and takes an afternoon rest" supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling.).

Fourth, the ALJ noted that Plaintiff did not stop working solely due to her allegedly disabling symptoms from the motor vehicle accident. (T. 18.) The ALJ noted that Plaintiff continued to work for a year after her motor vehicle accident and testified that she tried to go back to work but found no openings. (*Id.*)

In her argument that the ALJ's credibility determination was not supported by substantial evidence, Plaintiff references specific evidence to dispute the ALJ's credibility analysis. (Dkt. No. 11, at 15-16 [Pl.'s Mem. of Law].) For example, Plaintiff cites (1) her statements that she experienced only temporary pain relief from injections, (2) evidence indicating that she had difficulty performing activities of daily living, and (3) her July 2012 MRI examination showing nerve root impingement and marrow edema. (*Id*.)

However, a review of the complete decision indicates that the ALJ (1) acknowledged that the record showed periods of exacerbation in Plaintiff's back pain, and that Plaintiff reported that steroid injections typically provided pain relief for about a month, (2) accurately discussed Plaintiff's varied reports of her ability to perform activities of daily living, including testimony that her children helped her with cleaning and laundry, and (3) expressly considered the July 2012 MRI examination Plaintiff referenced, correctly noting that it "showed lumbarization of the S1 vertebra and degenerative changes with moderate narrowing of the L5-S1 neural foramen and impingement of the right L5 nerve root." (T. 13-18.) While the MRI showed marrow edema along the superior endplate of T12 that the ALJ did not specifically discuss, it also showed that previously observed marrow edema along the inferior endplate of T12 had significantly decreased or improved. (T. 515.)

In any event, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012). Where, as here, the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the

ALJ complied with the regulations and articulated the inconsistencies that he considered in discrediting Plaintiff's allegations of disabling impairments, including Plaintiff's medical evidence, treatment history, daily activities, and work history. (T. 13-18.) Moreover, the ALJ appropriately used his discretion as fact-finder to determine that Plaintiff's statements were not credible. *Mimms v. Heckler,* 750 F. 2d 180, 186 (2d Cir. 1984.)

"It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). Accordingly, the Court must uphold an ALJ's credibility determination where, as here, it is supported by substantial evidence. *Aponte*, 728 F.2d at 591.

For these reasons, remand is not required on this basis.

### C.      Whether the ALJ Erred in Determining that Plaintiff Could Perform Her Past Relevant Work or, Alternatively, Could Perform Other Existing Work

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 12-13[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step four of the sequential evaluation, the ALJ must determine whether a plaintiff has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). Past relevant work means work performed within the last 15 years that was substantial gainful activity level and performed long enough for the plaintiff to learn the job.[5]  20 C.F.R. § 404.1560(b)(1). A plaintiff will be found not disabled if the ALJ determines that a plaintiff has

---

[5]        Substantial Gainful Activity Monetary Amounts, Social Security Administration, http//www.ssa.gov/OACT/COLA/sga.html (last visited Aug. 25, 2016).

the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. 20 C.F.R. § 404.1560(b)(1); SSR 82-61, 1982 WL 31387 (Jan. 1, 1872).

First, the ALJ found that Plaintiff's past work as a hair braider and a customer service representative was past relevant work because it was performed within the past 15 years at substantial gainful activity level and was performed long enough to learn the jobs. (T. 18.) Second, the ALJ found that Plaintiff is able to perform her past relevant work by comparing Plaintiff's RFC with the physical and mental demands of these positions. (*Id.*)

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work because (1) the ALJ's finding was based on his erroneous RFC determination, and (2) the ALJ's decision did not explicitly discuss the exertional levels of the hair braider and customer service representative positions. (Dkt. No. 11, at 18 [Pl.'s Mem. of Law].) First, as discussed above in Part III.A. of this Decision and Order, the ALJ's RFC determination was supported by substantial evidence. Second, while the ALJ's decision did not explicitly discuss the exertional levels of the hair braider and customer service representative jobs, Plaintiff's argument neither identifies the exertional requirements of the positions nor points to specific evidence indicating that Plaintiff could not perform the exertional requirements of these positions. (*Id.*) In any event, even if the ALJ erred in determining that Plaintiff could perform her past relevant work at step four, the ALJ's alternative finding that Plaintiff could perform other existing work at step five was supported by substantial evidence as discussed below.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff

can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Plaintiff essentially argues that the ALJ was required to consult a vocational expert at step five based on Plaintiff's nonexertional limitations including pain and requiring use of a cane. (Dkt. No. 11, at 18-19 [Pl.'s Mem. of Law].) The Court notes that Plaintiff does not cite, and the record does not contain, a medical opinion indicating that Plaintiff is required to use a cane. (*Id.*) Moreover, examination notes from Dr. DiRubbo, Dr. Shapiro, and Dr. Sun observed that Plaintiff walked without the use of a cane or other assistive device. (T. 15-18.) Additionally, as discussed above in Part III.A. and Part III.B. of this Decision and Order, the ALJ properly determined that Plaintiff could perform the full range of sedentary work (without any nonexertional limitations) and assessed Plaintiff's credibility (including her subjective

allegations of pain).  Therefore, the ALJ was not required to consult a vocational expert, and properly found Plaintiff  "not disabled" as directed by Medical-Vocational Rule 201.28 at step five.

For these reasons, remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 29, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge